**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>v.                                    )<br>)<br>JAVIER ANGEL ROMERO, a/k/a Ramon Acosta,)<br>and PHILLIP ASARO, a/k/a Phil, ET AL,  )<br>         Defendants,                   )<br>_____) | **CRIMINAL ACTION**<br>**NO. 04-1685-CBS** |

**MEMORANDUM OF PROBABLE CAUSE AND**
**ORDER OF DETENTION**
**July 2, 2004**

**SWARTWOOD, M.J.**

I.  Nature of the Offense and the Government's Motion

On February 26, 2004, a Criminal Complaint was filed, charging multiple individuals, including Javier Angel Romero, a/k/a Ramon Acosta[1] ("Mr. Acosta") and Phillip Asaro, a/k/a Phil ("Mr. Asaro")(collectively "Defendants"), with conspiracy to possess with intent to distribute cocaine, in violation of 21 U.S.C. §846.

At these Defendants' initial appearance on May 3, 2004, they were advised of their right to a preliminary examination in accordance with Fed. R. Crim. P. 5.1 and the Government moved for

---

[1] The true name of the person identified in this Complaint as Javier Angel Ramero is Ramon Acosta-Cornielle and I will refer to him in this Memorandum/Order by his true name ("Mr. Acosta").

a detention hearing in accordance with 18 U.S.C. §§3142(f)(1)(B)(the offense charged provides for a maximum penalty of life imprisonment),(f)(1)(C)(Defendants are charged with an offense for which a maximum term of imprisonment of ten years or more is prescribed in the "Controlled Substances Act"), and (f)(2)(A)(risk of flight).

After several continuances requested by the Defendants, a consolidated probable cause/detention hearing was held on June 29, 2004.  However, with respect to Mr. Asaro, he had previously been released on conditions, but following the probable cause portion of this hearing, I agreed by separate Order to modify two of Mr. Asaro's conditions of release.

At this hearing, Jean Drouin, Special Agent with the Drug Enforcement Administration ("DEA"), testified on behalf of the Government and was cross-examined by Defendants' counsel.

## II.   Findings of Fact

1.   Special Agent Drouin is the case agent in connection with an investigation concerning the distribution of multiple kilograms of cocaine in the North Shore area of Massachusetts.  This investigation commenced in January 2003 and concluded on May 1, 2004 with the arrest of more than twenty defendants.  During this investigation, Special Agent Drouin and other law enforcement officials involved in this investigation, used informants, undercover agents, global positioning systems ("GPS") on four automobiles, surveillance of individuals and locations, Department

of Motor Vehicles photographs for identification of individuals involved in this investigation, recorded and monitored controlled purchases of cocaine and Title III wire intercepts on approximately twenty-one telephones.

    2.   Primarily as a result of wire intercepts, law enforcement officials were alerted that a multi-kilogram load of cocaine was to be delivered in late April or early May 2004 to the organization which was the subject of this investigation. Following up on these wire intercepts, law enforcement officials arrested over twenty defendants which the Government alleges were involved in a conspiracy to distribute multiple kilograms of cocaine in the North Shore of Massachusetts. As a result of these arrests, approximately 50 kilograms of cocaine and a substantial amount of cash were seized.

    3.   <u>Mr. Acosta</u>. Mr. Acosta was intercepted and recorded, talking to Mr. Rosales, an alleged leader of a cocaine conspiracy, thirty to fifty times. On September 20, 2003, Messrs. Acosta and Rosales were overheard making arrangements to meet at 115 Alley Street, in Lynn, Massachusetts for the purpose of purchasing a kilogram of cocaine. Law enforcement surveillance agents saw Mr. Rosales arrive at 115 Alley Street and thereafter, saw Mr. Acosta arrive. A local police officer recognized Mr. Acosta as he had arrested him on a prior occasion. Additionally, that officer and other surveilling agents had a booking photo of Mr. Acosta. <u>Id.</u>

4.   On December 8, 2003, another co-Defendant, Carlos Ruiz called Mr. Rosales wanting to purchase cocaine. Mr. Rosales then called Mr. Acosta to get cocaine. Mr. Acosta agreed and gave cocaine to Mr. Rosales, who sold it to Mr. Ruiz. Id.

5.   Mr. Asaro. Mr. Asaro was intercepted at least thirty times talking with Calvin Madera, who is another leader of this alleged drug conspiracy. On October 24-25, 2003, multiple telephone calls were intercepted between Messrs. Madera and Rosales about money due from Mr. Madera to Mr. Rosales for prior drug transactions; between Messrs. Madera and Asaro about a balance owed by Mr. Asaro to Mr. Madera for prior drug transactions and an amount that would be paid for a current delivery of a kilo of cocaine; and calls between Mr. Madera and his brother, another co-Defendant, Mr. Germosen, in which Mr. Madera was instructing Mr. Germosen to collect money owed to Mr. Madera by Mr. Asaro, pay that money to Mr. Rosales and to deliver a kilogram of cocaine to Mr. Asaro and collect an additional $28,500 ($500 was to be paid to Mr. Germosen for his errand) for a kilo of cocaine. Although this transaction involving drugs and money was temporarily interrupted, it is clear from the telephone intercepts that the transaction was eventually consummated by Mr. Germosen collecting money from Mr. Asaro and paying that money to Mr. Rosales and delivering a kilo of cocaine to Mr. Asaro for payment of $28,000. Id. From February 8 to February 10, 2004, Mr. Asaro was recorded calling Mr. Madera, seeking a kilogram of cocaine. On February 12, 2004, a meeting was

4

held between Messrs. Asaro and Madera concerning this transaction. Id.

### III. Probable Cause

I find probable cause for the offense charged in this Complaint against Messrs. Asaro and Acosta. As a result of wire intercepts and surveillance, Mr. Asaro has been identified as: a customer of Mr. Madera involving the purchase of kilogram(s) of cocaine (which is substantially more than would be purchased for personal use); and on at least one occasion, a supplier of Mr. Rosales. Mr. Acosta has been identified as an alternate supplier of cocaine for Mr. Rosales.

### IV. The Bail Reform Act

#### A. Discussion of the Bail Reform Act

Under 18 U.S.C. § 3142 ("The Bail Reform Act" or "the Act"), the judicial officer shall order that, pending trial, the Defendant be (1) released on his own recognizance or upon execution of an unsecured bond; (2) released on a condition or combination of conditions; (3) temporarily detained to permit revocation of conditional release, deportation, or exclusion; or (4) detained. 18 U.S.C. § 3142(a). Under the Act, the judicial officer may detain a person pending trial only if, after a detention hearing held pursuant to 18 U.S.C. § 3142(f), the judicial officer determines that "no condition or combination of conditions [set forth under 18 U.S.C. § 3142 (b) or (c)] will reasonably assure the appearance of the person as required and the safety of any other person and the

5

community". 18 U.S.C. § 3142(e). The Supreme Court, in <u>United States v. Salerno</u>, 481 U.S. 739, 747, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987) has cautioned that "[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." <u>Id.</u> at 755, 107 S.Ct. at 2105. For this reason, the Defendant may be detained only if the judicial officer finds by (1) clear and convincing evidence, that the Defendant is a danger to the community, or (2) a preponderance of the evidence, that the Defendant poses a risk of flight. <u>See</u> 18 U.S.C. § 3142 (f); <u>United States v. Jackson</u>, 823 F.2d 4-5 (2d Cir. 1987); <u>United States v. Berrios-Berrios</u>, 791 F.2d 246, 250 (2d Cir. (1986), cert. denied, 479 U.S. 978, 107 S.Ct. 562, 93 L.Ed.2d 568 (1986). <u>See</u> <u>also</u> <u>United States v. Patriarca</u>, 948 F.2d 789, 792-93 (1st Cir. 1991). Furthermore, the judicial officer "may not impose financial condition that results in the pretrial detention of the person". 18 U.S.C. § 3142 (c).

The Bail Reform Act establishes a two step procedure for making the determination that the Defendant should be detained. First, the Government is entitled to move for detention where the Defendant has been charged with one of the offenses enumerated in the statute for which Congress has determined that detention is warranted. <u>See</u> 18 U.S.C. § 3142 (f)(1). The Government may also move for detention, or the judicial officer may on his or her own motion move for detention, where the case involves a serious risk that the Defendant will flee or that the Defendant will obstruct or

attempt to obstruct justice. 18 U.S.C. § 3142(f)(2). Second, the judicial officer must determine whether any condition or combination of conditions will adequately ensure the appearance of the Defendant and the safety of the community against any danger posed by the Defendant's pretrial release. See United States v. Friedman, 837 F.2d 48, 49 (2d Cir. 1988).

In meeting its burden on the issue of whether any condition or combination of conditions of release will reasonably assure the appearance of the person as required and the safety of the community, the Government is aided by the statutory presumptions created by 18 U.S.C. 3142(e). Where the offense charged is one of the offenses enumerated in Section 3142(f)(1), Section 3142(e) creates the rebuttable presumption that no condition or combination of conditions will reasonably assure the safety of the community if the judicial officer finds that: (1) the Defendant has been convicted of a federal offense that is described in Section 3142(f) or an offense under state law that would have been an offense described in Section 3142(f)(1) if federal jurisdiction had existed, (2) such offense was committed while the person was on release pending trial for a federal, state or local offense, and (3) a period of not more than five years has elapsed since the date of conviction or release from imprisonment for such offense. Section 3142(e) also creates the rebuttable presumption that no condition or combination of conditions will ensure the safety of the community and the appearance of the Defendant if the judicial

officer finds that there is probable cause to believe that the Defendant committed an offense: (1) for which a maximum term of imprisonment of ten years or more is prescribed (a) in the Controlled Substances Act, (b) the Controlled Substances Import and Export Act, or (c) the Maritime Drug Enforcement Act; or (2) under 18 U.S.C. § 924(c).  In order to rebut either presumption, the Defendant must produce "some evidence" to the contrary.  United States v. Jessup, 752 F.2d 378, 384 (1st Cir. 1985).

In making the determination as to whether "any condition or combination of conditions will reasonably assure the appearance of the [Defendant] as required and the safety of any other person and of the community", the judicial officer is compelled to consider the following factors:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including:
>
>> a. the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>>
>> b. whether, at the time of the current offense or arrest, he was on probation, on parole, or other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State or local law; and

>    (4) the nature and seriousness of the danger to any other person or the community that would be posed by the person's release . . . .

18 U.S.C. § 3142(g).

### V. Discussion of Whether Detention is Warranted

#### A. Mr. Acosta's History and Characteristics

Mr. Acosta was born on March 15, 1964, in the Dominican Republic where he remained until he was approximately twenty-two years old. In 1986, Mr. Acosta attempted unsuccessfully to enter the United States illegally through Puerto Rico. On December 1, 1989, Mr. Acosta entered the United States through an amnesty claim and was admitted to the United States as a legal permanent resident. <u>Def's Ex. A</u>.

For the past eleven years, Mr. Acosta has had a relationship with a Ms. Disala, who is an illegal alien. Mr. Acosta has three children with Ms. Disala and she has two children from a prior relationship. All five of these children have been living with Mr. Acosta and Ms. Disala, in Lynn, Massachusetts.

Mr. Acosta has three children living in the Dominican Republic whose mother(s) have not been identified. Mr. Acosta mother and father live in the Dominican Republic and all of his three siblings reside in the United States as legal permanent residents.

Mr. Acosta has been working "on and off" at his brother's automobile detailing business, in Lynn, Massachusetts. <u>Def's Ex. C</u>. Additionally, Mr. Acosta makes money singing at weddings and festivals. As noted earlier, Mr. Acosta attempted to enter the

United States illegally and was sentenced to three years probation for that attempt.

In the last two years, Mr. Acosta has returned to the Dominican Republic on seven separate occasions.

### C. Nature of the Offense and Weight of the Evidence

I have previously found probable cause for the offense charged against Mr. Acosta in this Complaint. I find that Mr. Acosta was intercepted and recorded, making arrangements for the sale of a substantial amount of cocaine to a leader of the conspiracy alleged in this Complaint. Therefore, I find that the weight of the evidence against Mr. Acosta is substantial.

### D. Rebuttable Presumption

The United States has moved for detention pursuant to 18 U.S.C. §§ 3142(f)(1)(B), (f)(1)(C), and (f)(2)(A). The Government must prove that there is no condition or combination of conditions that would reasonably assure the safety of any other person or the community if Mr. Acosta were released, or the appearance of Mr. Acosta as required.

The rebuttable presumption created by 18 U.S.C. § 3142(e) applies in this case, because Mr. Acosta is charged with a drug offense for which a maximum penalty of ten years or more is prescribed in the Controlled Substances Act. I have found probable cause exists for the offense charged against Mr. Acosta in the Complaint. Therefore, I find that under 18 U.S.C. §3142(e), there is a rebuttable presumption that no condition or combination of

conditions will reasonably assure the appearance of Mr. Acosta or the safety of the community if he were released. Contrary to Mr. Acosta's lawyer's arguments, I find that Mr. Acosta has not produced nor proffered any credible evidence on his own behalf to rebut this presumption. Without such evidence, the presumption alone may justify detention. United States v. Alatishe, 768 F.2d 364, 371 (D.C. Cir. 1985); United States v. Vires, 637 F. Supp. 1343, 1351 (W.D.Ky. 1986). Although I have determined that Mr. Acosta has failed to rebut the presumption, for the sake of completeness, I will examine the Government's assertion that Mr. Acosta poses a danger to the community and a risk of flight.

    E.   <u>Whether Mr. Acosta Poses A Danger to the Community</u>

Mr. Acosta has been intercepted and recorded, making arrangements with Mr. Rosales for the sale of a substantial amount of cocaine. However, Mr. Acosta does not have a substantial criminal record and no record of convictions for prior drug dealing or crimes of violence. Therefore, I am relying on the rebuttable presumption to detain Mr. Acosta on dangerousness grounds.

    F.   <u>Whether Mr. Acosta Poses A Risk Of Flight</u>

Mr. Acosta has effectively used in the past an alias and in fact has been arrested under that alias. Although Mr. Acosta has substantial ties to the Lynn area, where his long term girlfriend and her two and their three children reside, he also has substantial ties to the Dominican Republic, where his parents and three additional children live and where he has visited on at least

seven separate occasions in the last two years. Furthermore, Mr. Acosta's girlfriend has no legal status and may herself be subject to deportation at any time. Therefore, considering the substantial penalty Mr. Acosta faces in this case if he is found guilty, his family ties to the Dominican Republic and his substantial recent travel to the Dominical Republic, I find by a preponderance of the evidence that Mr. Acosta poses a risk of flight and that there are no conditions or combination of conditions that I may impose that would assure his appearance in Court as directed.

## IV.   Order of Detention Pending Trial

In accordance with the foregoing memorandum,

IT IS ORDERED:

1. That Mr. Acosta be committed to the custody of the Attorney General or his designated representative, for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal;

2. That Mr. Acosta be afforded a reasonable opportunity for private consultation with counsel; and

3. On order of a court of the United States or on request by an attorney for the Government, the person in charge of the corrections facility in which Mr. Acosta are detained and confined shall deliver Mr. Acosta to an authorized Deputy United States Marshal for the purpose of any appearance in connection with a court proceeding.

<u>RIGHT OF APPEAL</u>

THE PERSON OR PERSONS DETAINED BY THIS ORDER MAY FILE A MOTION FOR REVOCATION OR AMENDMENT OF THE ORDER PURSUANT TO 18 U.S.C. § 3145(b).

<u>/s/Charles B. Swartwood, III</u>
CHARLES B. SWARTWOOD, III
MAGISTRATE JUDGE